United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Encompass Home & Auto Insurance Company, Plaintiff | ) ) ) ) | |
| v. | ) ) | Civil Action No. 16-23151-Civ-Scola |
| Jodee C. Edwards, and others, Defendants. | ) ) ) | |

**Order on Defendant's Motion for Judgment on the Pleadings and Plaintiff's Motion for Summary Judgment**

Plaintiff Encompass Home & Auto Insurance Company ("Encompass") seeks a declaratory judgment that an insurance policy issued to Defendant Jodee Edwards does not obligate Encompass to defend or indemnify her in a personal injury lawsuit brought by Defendant H.E.S., a minor, by and through her parents, natural guardians and next friends Randy and Linda Skjsersven ("H.E.S."). This matter is before the Court on Defendant H.E.S.'s Motion for Judgment on the Pleadings (ECF No. 39) and the Plaintiff's Motion for Final Summary Judgment (ECF No. 37). For the reasons set forth below, the Court **denies** the Motion for Judgment on the Pleadings (**ECF No. 39**) and **grants** the Motion for Final Summary Judgment (**ECF No. 37**).

1. **Background**

In January 2015, H.E.S. was a passenger aboard the M/S Pride, a Carnival Corporation cruise ship. (Am. Compl. in No. 16-20331 ¶ 14, ECF No. 33.) During the cruise, H.E.S.'s mother enrolled her in program for teenagers called Club O2. (*Id.* ¶ 25.) Two other participants in the program were minors E.H. and K.M.A. (*See id.* ¶ 33.) On the night of January 31, 2015, H.E.S. attended an event at Club O2. (*Id.*) E.H. and K.M.A convinced H.E.S. to accompany them to the stateroom that E.H. shared with his older brother. (*Id.* ¶ 36.) The teenagers then consumed alcohol that E.H.'s older brother had supplied to E.H. (*Id.* ¶ 37.) H.E.S. alleges that while she was intoxicated and unable to provide consent, E.H. and K.M.A sexually assaulted her. (*Id.* ¶¶ 37-39.)

On January 28, 2016, H.E.S., through her parents, brought suit against Edwards, as E.H.'s mother, and Carnival Corporation (hereinafter, the "Personal Injury Suit"). *See H.S., a minor, by and through her Parents, natural guardians and next friends, R.S. and L.S. v. Carnival Corp., et al.*, No. 16–20331

(King, J.). H.E.S. asserts one cause of action against Edwards for her negligent supervision of E.H. (Am. Compl. in Case No. 16-20331 ¶¶ 72-84, ECF No. 33.) Edwards has a home and auto insurance policy through Encompass. (Pl.'s Statement of Facts ¶ 4, ECF No. 38.) Relying on a provision in the policy that excludes bodily injury or property damage "[a]rising out of sexual molestation, corporal punishment, or physical or mental abuse" from coverage, Encompass seeks a declaratory judgment that the policy does not cover losses or damages arising from H.E.S.'s injuries, and that it is not obligated to defend Edwards in the Personal Injury Suit. (Mot. for Summ. J. at 6-8.)

## 2. Legal Standard

### A. Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010). A court ruling on a 12(c) motion must "accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.*

### B. Summary Judgment

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and

present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

3. **Analysis**

The parties agree that Ohio law controls. (*See* H.E.S.'s Mot. for J. on the Pleadings at 2; Encompass's Mot. for Summ. J. at 5-7; Edwards's Resp. in Opp. at 4, ECF No. 43.) Encompass and H.E.S.'s motions both concern the proper interpretation of the exclusion in Edwards's insurance policy for bodily injury arising out of sexual molestation. In her Motion for Judgment on the Pleadings, H.E.S. argues that Ohio courts have narrowly interpreted the phrase "arising out of" in insurance policies, and the negligent supervision claim asserted against Edwards does not "arise out of" sexual molestation because there is no allegation that Edwards herself molested H.E.S. (Mot. for J. on the Pleadings at 4-12.) In its Motion for Final Summary Judgment, Encompass argues that Ohio courts have interpreted nearly identical exclusions to encompass negligence claims brought against the parents of minors who commit sexual molestation. (Mot. for Summ. J. at 13-19.)

Under Ohio law, when the facts alleged in a complaint "arguably or potentially fall within the scope" of coverage of an insurance policy, an insurer must defend the insured in the lawsuit. *Sherwin-Williams Co. v. Certain Underwriters at Lloyd's London*, 813 F.Supp. 576, 582 (N.D. Ohio 1993) (citations omitted). This is known as the "scope of the allegations" test. *Id.* Any doubts regarding coverage must be resolved in favor of the insured. *Id.* at 583 (citations omitted). However, "[i]f none of the claims asserted in a complaint against the insured are arguably or potentially within the scope of the insurer's policy, then the insurer obviously has no duty to defend." *Id.* (citing *Wedge Prod.'s, Inc. v. Hartford Equity Sales Co.*, 509 N.E.2d 74 (Ohio 1987)); *see also Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1120 (Ohio 1996) (citations omitted) ("An insurer has no duty to defend where the acts alleged of an insured fall outside the scope of policy coverage.").

In order to determine whether claims in a complaint arguably or potentially fall within the scope of coverage, a court must compare the language of the insurance policy, including any exclusionary language, with

the claims asserted in the complaint. *Sherwin-Williams Co.*, 813 F.Supp. at 582. Exclusionary language must be read strictly, and any ambiguity in the policy must be construed in favor of the insured. *Id.* (citing *Am. Fin. Corp. v. Fireman's Fund Ins. Co.*, 239 N.E.2d 33, 35 (Ohio 1968)). In order for an insurer to defeat coverage, it must demonstrate that the clause on which it relies "'is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language.'" *Crow v. Dooley*, 2012-Ohio-2565, 2012 WL 2090078, at *3 (Ohio Ct. App. June 11, 2012) (quoting *Bosserman Aviation Equip. v. U.S. Liab. Ins. Co.*, 2009-Ohio-2526, 915 N.E.2d 687 (Ohio Ct. App. 2009)). An insurance policy is a contract, and the terms "are to be given their plain and ordinary meaning." *Crow*, 2012 WL 2090078, at *2 (citations omitted). "When confronted with an issue of contractual interpretation, the court must examine the contract as a whole, presume the parties' intent is reflected in the contract language, and give effect to that intent." *Doe v. Sherwin*, 2015-Ohio-2451, 2015 WL 3824019, at *2 (Ohio Ct. App. June 22, 2015) (citing *Currier v. Penn-Ohio Logistics*, 2010-Ohio-195, 927 N.E.2d 604 (Ohio Ct. App. 2011)). If a contract is clear and unambiguous, a court does not need to look any further than the four corners of the insurance policy to determine the intent of the parties. *Crow*, 2012 WL 2090078, at *2 (citations omitted).

The Court will first determine the proper interpretation of the exclusionary language on which Encompass relies, and will then analyze the allegations against Edwards to determine whether they fall within the scope of the exclusion.

### A. Interpretation of the Exclusionary Language

Encompass relies on an exclusion in Edwards's insurance policy for bodily injury or property damage "[a]rising out of sexual molestation, corporal punishment, or physical or mental abuse." (Mot. for Summ. J. at 2.) In *World Harvest Church v. Grange Mut. Cas. Co.*, 2016-Ohio-2913, 68 N.E.3d 738 (Ohio 2016), the Supreme Court of Ohio interpreted a similar provision in an insurance policy. There, the parents of a minor who was physically abused at a church daycare sued the employee who inflicted the abuse as well as the church. *Id.* at 739. The parents asserted claims of negligent hiring, negligent supervision, and respondeat superior against the church. *Id.* The church's insurance policy excluded coverage for bodily injury or property damage "arising out of the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured," as well as damage arising out of the negligent employment and supervision of a person for whom an insured is legally responsible. *Id.* at 742. Therefore, the claims for negligent hiring and supervision were expressly excluded from coverage. *See id.* at 745.

With respect to the respondeat superior claim, the court analyzed the provision excluding coverage for injuries arising out of actual or threatened abuse, holding:

> We find that the abuse exclusion simply does not limit the exclusion to claims for bodily injury arising from *direct* liability, while failing to exclude claims for bodily injury arising from secondary, or vicarious, liability for the same conduct. Indeed, the language in the exclusion is simple and unambiguous: there is *no* coverage for any injury arising from abuse or molestation. To hold otherwise, we would have to insert language into the exclusion.

*Id.* (emphasis in original). Accordingly, the court held that the respondeat superior claim was excluded from coverage.

H.E.S. argues that *World Harvest Church* is distinguishable because the policy at issue specifically excluded claims for negligent supervision. (Mot. for J. on the Pleadings at 10.) While this is true, the court's analysis of whether the respondeat superior claim was excluded from coverage under the abuse exclusion is instructive as to the proper interpretation of the phrase "arising out of" in exclusionary provisions. The Court sees no reason why the same interpretation would not apply here; that is, that the sexual molestation exclusion is properly interpreted to mean that there is no coverage for any injury arising from sexual molestation, whether the claim asserts direct liability for the sexual molestation or not.

In addition to *World Harvest Church*, Encompass cites to four decisions from the Ohio Courts of Appeals interpreting provisions with nearly identical language as the exclusion in Edwards's policy to exclude claims of negligence and/or negligent supervision asserted against the parents of minors who committed sexual assault. *See Doe v. Sherwin*, 2015-Ohio-2451, 2015 WL 3824019 (Ohio Ct. App. June 22, 2015) (holding that negligence claims asserted against parents of a minor who committed sexual assault were excluded from coverage in nearly identical policy provision); *Crow*, 2012 WL 2090078 (same); *Westfield Ins. Co. v. Porchervina*, 2008-Ohio-6558, 2008 WL 5205662 (Ohio Ct. App. Dec. 12, 2008) (same); *United Ohio Ins. Co. v. Myers*, 2002-Ohio-6596, 2002 WL 31716117 (Ohio Ct. App. Dec. 4, 2002) (holding that negligence claims asserted against grandparent of minor who sexually molested other minors were excluded from coverage under homeowners' policy).

For example, in *Crow v. Dooley,* the Ohio Court of Appeals interpreted an exclusion in an insurance policy for "'[b]odily injury' or 'property damage' arising out of sexual molestation, corporal punishment or physical abuse," which is nearly identical to the exclusion at issue here. *Id.* at *3. The insured

sought coverage for a lawsuit that alleged that she negligently supervised her son, who sexually assaulted and molested a minor. *Id.* at *1. The court held that the negligence claims were excluded from coverage under the "unambiguous language of the Sexual Molestation provision." *Id.* at *4. Citing to a Supreme Court of Ohio opinion, the court noted that the phrase "'[a]rising out of' connotes the need for a direct consequence or a responsible condition." *Id.* (citing *Westfield Ins. Co. v. Hunter*, 2011-Ohio-1818, 948 N.E.2d 931 (Ohio 2011)) (additional citations omitted). The court reasoned that because the insured's alleged negligence "caused or contributed to and was a responsible condition" for the injury to the minor, the alleged negligence arose out of the sexual molestation. *Id.* The court looked at the fact that each cause of action asserted against the insured alleged damages as a result of the insured's conduct, noting in particular that the complaint "fails to allege any bodily injury due solely to [the insured's] negligence, but rather, predicates the damages on the conduct of [the insured] in conjunction with [her son's] conduct." *Id.*

H.E.S. argues that *Crow* is distinguishable from this case because the exclusion at issue in *Crow* "did not contain language referring to the mental state of the perpatrator [sic]," whereas here, the policy distinguishes "liability for an intentional tort from liability for negligence contributing to the intentional tort." (Mot. for J. on the Pleadings at 11.) H.E.S. presumably refers to an exclusion in Edwards's policy for bodily injury or property damage "intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of one or more covered persons," but that is not the exclusion on which Encompass relies. Rather, Encompass relies on a separate exclusion for bodily injury or property damage "arising out of sexual molestation, corporal punishment, or physical or mental abuse." (Mot. for Summ. J. at 2.) Thus, *Crow*'s analysis is directly on point. *See Crow,* 2012 WL 2090078 at *3-4.

H.E.S. also attempts to distinguish the other Ohio Courts of Appeals cases cited by Encompass. H.E.S. successfully distinguishes *United Ins. Co. v. Myers* because the policy provision at issue there specifically excluded from coverage claims of negligent supervision. 2002 WL 31716117, at *3-4. However, the exclusions at issue in *Westfield Ins. Co. v. Porchervina* and *Doe v. Sherwin* are nearly identical to the exclusion at issue here. H.E.S. argues that *Porchervina* should be distinguished because it involved a claim for negligent infliction of emotional distress rather than negligent supervision, and the court found that under Ohio law emotional distress did not constitute a bodily injury under the policy. (Mot. for J. on the Pleadings at 10-11.) However, the court set forth an alternative holding, finding that the negligence claim was also excluded from coverage pursuant to an exclusion in the policy for bodily injury

"arising out of sexual molestation, corporal punishment or physical or mental abuse," since all of the alleged injuries arose out of the sexual molestation by the insured's son. *Porchervina*, 2008 WL 5205662, at *4-5. H.E.S. has not provided any substantive reason for why a claim of negligent infliction of emotional distress should be treated differently than a claim of negligent supervision, nor does the language of the sexual molestation exclusion provide a basis for such a distinction.

H.E.S. urges the Court to disregard *Sherwin* because of an "emphasized dissent which finds that the majority misapplied" the Ohio Supreme Court's decision in *Westfield Ins. Co. v. Hunter*, 2011-Ohio-1818, 948 N.E.2d 931, 933 (Ohio 2011). (Mot. for J. on the Pleadings at 12.) However, the mere fact that there is a dissenting opinion does not render the majority opinion in *Sherwin* unpersuasive. Furthermore, even if the Court were to disregard *Sherwin*, the decisions in *Porchervina, Crow,* and *World Harvest Church* all support Encompass's interpretation of the sexual molestation exclusion.

In her Motion for Judgment on the Pleadings, H.E.S. primarily relies on two Ohio Supreme Court cases. (Mot. for J. on the Pleadings at 5-9.) In the first case, *Westfield Ins. Co. v. Hunter*, the Ohio Supreme Court interpreted an exclusion in a homeowners' policy for claims arising out of premises owned by the insured that are not insured locations. 948 N.E.2d at 933. The insured were sued by their grandchild and his parents for negligence related to an accident that occurred on one of their properties that was not an insured location. *Id.* at 934. The complaint did not allege that any condition on the property contributed to the accident. *Id.* The court held that the exclusion was properly interpreted to exclude coverage for premises-based liability claims, but did not exclude "claims that arise from the insured's alleged negligence if that negligence is unrelated to the quality or condition of the premises . . . ." *Id.* at 937. The court cited with approval a case in which the Kentucky Supreme Court held that the phrase "'arising out of' . . . connotes the need for a direct or responsible condition." *Id.* at 936 (quoting *Eyler v. Nationwide Mut. Ins. Co.*, 824 S.W.2d 855, 857 (Ky. 1992)).

H.E.S. argues that, pursuant to *Hunter*, the Court "should find that the claims in the underlying lawsuit arise out of negligent supervision and hence do not 'arise out of' the sexual molestation exclusion . . . ." (Mot. for J. on the Pleadings at 7.) It is unclear to the Court how *Hunter* supports such a finding. Moreover, *Hunter* is not inconsistent with the reasoning of *World Harvest Church* or the various Courts of Appeals cases interpreting nearly identical sexual molestation exclusions to exclude claims of negligence against parents of minors who commit sexual molestation. Indeed, two of the Courts of Appeals cases discussed above were decided after *Hunter* and specifically noted that the analysis in *Hunter* is instructive to the application of the term "arising out of,"

but that the case is factually distinguishable from cases involving the application of sexual molestation exclusions to negligence claims. *Sherwin*, 2015 WL 3824019, at *4; *Crow*, 2012 WL 2090078, at *4. Those two cases applied the *Hunter* court's definition of "arising out of" in concluding that the claims for negligent supervision alleged a responsible condition for the underlying sexual molestation and were therefore excluded from coverage. *Id.*

In addition, H.E.S. argues that *Hunter* "is consistent with well established Ohio law which holds that exclusions for intentional acts do not categorically defeat coverage for related negligent acts of other insured . . . ." (Mot. for J. on the Pleadings at 8.) H.E.S. also relies on *Safeco Ins. Co. of Am. V. White*, 2009-Ohio-3718, 913 N.E.2d 426 (Ohio 2009), in support of this argument. (*Id.* at 8-9.) In *Safeco,* a negligence action was filed against the insured after their son attacked another child. *Id.* at 428. The insurance policy excluded coverage for injury or damage that was "expected or intended by an insured or which is the foreseeable result of an act or omission intended by an insured." *Id.* at 430. The court held that "whether the act is intentional must be determined from the perspective of the person seeking coverage," and concluded that,

> [T]orts like negligent supervision, hiring, retention, and entrustment are separate and distinct from the related intentional torts . . . that make the negligent torts actionable. Thus, in determining whether a policy exclusion precludes coverage for that negligent act, we must examine the injuries arising from the negligent act on their own accord, not as part of the intentional act.

*Id.* at 432, 434.

Once again, the Court fails to see how this holding is inconsistent with *World Harvest Church* or any other decision cited by Encompass. The exclusion at issue here does not distinguish in any way between negligent and intentional acts. Rather, it broadly applies to *any* bodily injury or property damage "[a]rising out of sexual molestation, corporal punishment, or physical or mental abuse." (Pl.'s Statement of Facts ¶ 6.) The court in *Crow* found that its decision was not at odds with *Safeco* for precisely this reason. 2012 WL 2090078, at *5 (noting that the policy provisions at issue in *Safeco* contained language concerning the expected or intended consequences of an action, whereas the sexual molestation exclusion at issue in *Crow* did not contain "any language regarding the necessary knowledge or intent of the insured.")

Taking into account each of the cases cited by the parties, the Court finds that, under Ohio law, the exclusion in Edwards's insurance policy for bodily injury "[a]rising out of sexual molestation, corporal punishment, or

physical or mental abuse" is properly interpreted to exclude the negligent supervision claim against Edwards to the extent that the alleged injuries arise out of E.H.'s sexual assault. The Court must next compare the specific allegations against Edwards with the exclusion to determine whether all of the injuries and damages alleged by H.E.S. arise out of the sexual molestation.

### B. Application of the Exclusion to the Claim Against Edwards

Encompass asserts that "[t]here is no dispute that the claims of H.S. are wholly based upon her being sexually assaulted by E.H." and cites to paragraph 14 of its Statement of Facts, which states that H.E.S.'s injuries were "a direct and proximate result of the sexual assault and battery . . . ." (Mot. for Summ. J. at 8; Pl.'s Statement of Facts ¶ 14.) H.E.S. does not dispute paragraph 14 of Encompass's Statement of Facts. (Resp. in Opp. at 4, ECF No. 42.) Indeed, in H.E.S.'s Motion for Judgment on the Pleadings, H.E.S. states that she filed suit against Edwards "for negligence which caused a sexual assault . . . ." (Mot. for J. on the Pleadings at 1-2.) However, Edwards argues that the Amended Complaint also includes allegations that her negligent supervision led to E.H. furnishing alcohol to H.E.S. in violation of Ohio law. (Edwards's Resp. in Opp. at 3, ECF No. 43.) Therefore, Edwards argues that Encompass has a duty to defend and indemnify her for the "separate and distinct allegations of negligent supervision against Edwards related to the intoxication of H.E.S." (*Id.*)

In analyzing whether a negligence claim falls within the scope of a sexual molestation exclusion, Ohio courts look at the source of the alleged injuries. *See Crow*, 2012 WL 2090078, at *4 (noting that the complaint "fails to allege any bodily injury due solely to [the insured's] negligence, but rather, predicates the damages on the conduct of [the insured] in conjunction with [her son's] conduct."); *Porchervina*, 2008 WL 5205662, at *5 (noting that all of the plaintiff's alleged injuries, including those attributed to the negligence of the parents of the defendant, resulted from the alleged sexual molestation by the defendant). The Amended Complaint in the Personal Injury Suit generally alleges that "[a]s a direct and proximate result of the sexual assault and battery referred to above, minor H.S. was injured in and about her body and extremities . . . ." (Am. Compl. in No. 16-20331 ¶ 40.) With respect to the claim against Edwards, the Amended Complaint alleges that "[a]s a direct and proximate result of the sexual assault . . . and hence as a direct and proximate result of Defendant Jodee C. Edward's negligent supervision of E.H., H.S. has sustained and will in the future continue to sustain the compensatory damages alleged in Paragraph 39." (*Id.* ¶ 83.) Thus, the Amended Complaint clearly states that Edwards's negligent supervision was a responsible condition for H.E.S.'s injuries and that the injuries were a direct and proximate result of the

sexual assault. Although the Amended Complaint does allege that Edwards failed to prevent E.H. from obtaining alcoholic beverages and was therefore negligent under Ohio law (*id.* ¶ 80), nowhere does the Amended Complaint allege that H.E.S. suffered injuries as a result of drinking alcohol, nor does the Amended Complaint allege a separate cause of action against Edwards for her failure to prevent E.H. from obtaining alcoholic beverages in violation of Ohio law. Therefore, pursuant to *Porchervina* and *Crow*, the claim asserted against Edwards falls within the scope of the exclusion for injuries arising out of sexual molestation because all of H.E.S.'s injuries are alleged to have resulted from the sexual assault.

Moreover, to the extent that the Amended Complaint can be read to include a separate allegation of negligent supervision against Edwards for H.E.S.'s intoxication, Encompass notes that Edwards's insurance policy limits coverage to claims or suits for bodily injury or property damage. (Reply at 3, ECF No. 48.) Specifically, the policy provides coverage for claims or suits "brought against any covered person" for personal injury, bodily injury, or property damage "caused by an occurrence to which this coverage applies . . . ." (Statement of Facts ¶ 5.) The term "occurrence" is specifically defined as "[a]n accident . . . resulting in bodily injury or property damage." (*Id.* ¶ 7.) The term "bodily injury" is defined as "physical bodily harm, including sickness or disease. This includes required care, loss of services and death resulting therefrom." (*Id.*) Since there is no allegation in the Amended Complaint that H.E.S. suffered bodily injury or property damage from the alcohol that she consumed, the policy does not cover any "separate and distinct allegations of negligent supervision against Edwards related to the intoxication of H.E.S," to the extent there are any.

Therefore, pursuant to Ohio law and the plain meaning of the terms of the insurance policy, the claim for negligent supervision asserted against Edwards is outside the scope of coverage and Encompass has no duty to defend or indemnify Edwards in the Personal Injury Suit.

### 4. Conclusion

Accordingly, for the reasons set forth above, the Court **denies** the Defendant's Motion for Judgment on the Pleadings (**ECF No. 39**) and **grants** the Plaintiff's Motion for Final Summary Judgment (**ECF No. 37**). The Court directs the Clerk to **close** this case.

**Done and ordered** in chambers, at Miami, Florida, on August 14, 2017.

_____
Robert N. Scola, Jr.
United States District Judge